UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK S. KAMINSKI, | ) |
| Plaintiff, | ) |
| | ) 07 C 3405 |
| v. | ) |
| | ) Judge George M. Marovich |
| JANET NAPOLITANO, | ) |
| Secretary, U.S. Department of Homeland | ) |
| Security, Transportation Safety Administration, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mark S. Kaminski ("Kaminski") filed against Michael Chertoff, then-Secretary of the U.S. Department of Homeland Security, a complaint alleging that he was retaliated against in violation of Title VII of the Civil Rights Act of 1964. (Janet Napolitano is automatically substituted pursuant to Federal Rule of Civil Procedure 25(d).) Before the Court is defendant's motion for summary judgment. For the reasons set forth below, the Court grants defendant's motion for summary judgment.

**I.    Background**

Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. As the Court notes on its website (and has mentioned in multiple opinions), the Court enforces Local Rule 56.1 strictly. Facts that are argued but do not conform with the rule are not considered by the Court. For example, facts included in a party's brief but not in its statement of facts are not considered by the Court because to do so would rob the other party of the opportunity to show that such facts are disputed.

Pursuant to Local Rule 56.1, the Court deems a fact admitted if one party supports that fact with admissible evidence and the other party fails to controvert the fact *with citation to admissible evidence*. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). It is not enough at the summary judgment stage for either party to *say* a fact is disputed. The Court considers a fact disputed *only* if both parties put forth *admissible* evidence of his or its version of the fact.

In this case, plaintiff failed to respond to defendant's statement of undisputed facts. (The Court notes that defendant, in compliance with Local Rule 56.2, served plaintiff, who is proceeding *pro se*, with the required notice explaining how to respond properly to a motion for summary judgment and a statement of facts.) Accordingly, the Court deems admitted the facts in defendant's statement of facts that defendant supported with admissible evidence. Local Rule 56.1, however, does not absolve defendant of its burden of putting forth admissible evidence to support the facts in its statement of facts. The Court has carefully considered defendant's statement of facts and has deemed admitted only those facts that defendant supported with evidence (i.e., deposition testimony, documents or affidavits) admissible for summary judgment purposes. For example, portions of defendant's facts numbered 1, 3, 12, 14, 16 and 29 were not supported by the cited evidence or had no cite to admissible evidence. The Court ignores those portions that were not supported by admissible evidence.[1]

The following facts are undisputed.

---

[1] In addition, while the Court would not ordinarily ignore facts supported only by inadmissible hearsay unless the opposing party objected to the hearsay evidence, the Court has, in this case, ignored facts supported only by hearsay. The Court has done so out of concern for fairness to Mr. Kaminski, who is proceeding *pro se*. This means that the Court has ignored portions of facts numbered 14, 16, 17, 18, 19, 21, 22 and 23, because they were supported only by hearsay. *See Woods v. City of Chi*, 234 F.3d 979, 988 (7th Cir. 2001) ("Normally, . . . at the summary judgment stage, a party seeking to offer the business record must attach an affidavit sworn to by a person who would be qualified to introduce the record as evidence at trial."). Those portions would not have affected the Court's decision or the outcome of the case.

On August 1, 2002, the Transportation Safety Administration ("TSA") hired plaintiff Kaminski as a Supervisory Transportation Security Screener ("STSS"). As such, Kaminski was responsible for supervising lead screeners and screeners at O'Hare International Airport checkpoints. For the first two months, Kaminski worked on the day shift at domestic terminals. After two months, the TSA transferred Kaminski to the night shift.

Kaminski thought his transfer to the night shift was unfair. In February 2003, Kaminski contacted the TSA's office of Civil Rights to complain about his transfer to the night shift. Ultimately, he chose not to pursue a civil rights complaint, because he wanted to be a team player.

Instead, Kaminski complained to the Federal Security Director, Michael Zunk ("Zunk") about his night-shift transfer. After Kaminski complained to Zunk, the TSA transferred Kaminski back to the day shift. This time, Kaminski was assigned to Terminal 5 (the international terminal), where he reported to Rob Perry ("Perry") and Wayne Popelka.

At several points during his tenure at the TSA, Kaminski had performance problems. For example, in December 2002, an American Airlines flight attendant complained to TSA about Kaminski. The flight attendant told TSA that after she had cleared the initial security checkpoint, Kaminski approached her and the two engaged in a loud altercation over whether she should give her identification card to Kaminski. The flight attendant described Kaminski's behavior as demeaning and disrespectful. Kaminski later apologized to the TSA for any embarrassment his conduct might have caused.

On December 12, 2002, an Arab-American passenger wearing a head scarf and a long coat passed through security. Kaminski asked one of his screeners whether the passenger had been selected for secondary screening. Kaminski also stated that he would have selected her for

secondary screening based on her attire. The next day, Kaminski was counseled about his poor job performance and his demeanor.

In June 2003, TSA received complaints about Kaminski from screeners. The screeners complained that Kaminski was asking Middle Eastern passengers how much money they were traveling with and instructing screeners to do the same. TSA, however, was not responsible for enforcing the $10,000 limit on the amount of money with which airline passengers are permitted to leave the country. That is the job of customs agents.

On July 7, 2003, Terminal Manager Perry met with Kaminski. Perry counseled Kaminski about reports TSA had received that said Kaminski had been profiling passengers. Perry also counseled Kaminski about his poor leadership and customer-service skills and about his inability to accept criticism. Perry reassigned Kaminski to a non-supervisory position in Terminal 3, which had fewer international flights.

On July 9, 2003, Kaminski started his new position in Terminal 3. At some point during the shift, the screeners gathered for a meeting. Kaminski asked and was granted permission to address the meeting. Kaminski stated that he had been falsely accused of racially profiling, that screeners should be careful what they say and that screeners should not trust anyone at TSA.

When Federal Director Zunk heard about Kaminski's comments to the screeners, he met with Kaminski. Kaminski admitted to Zunk that he had made the statements. Zunk placed Kaminski on administrative leave pending discipline for the comments. Ultimately, Kaminski resigned from the TSA. When Zunk placed Kaminski on adminstrative leave, Zunk was not aware that Kaminski had ever made a civil rights complaint.

It is undisputed that Kaminski has no evidence of other screeners who were racially profiling customers but not placed on administrative leave.

Kaminski filed suit claiming that he was placed on administrative leave in retaliation for his prior civil rights complaint. Defendant has moved for summary judgment.

## II. **Summary Judgment Standards**

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III. **Discussion**

Kaminski's claim is that he was retaliated against in violation of Title VII. Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). In this case, Kaminski asserts that he was placed on administrative leave in retaliation for his having made a civil rights complaint in connection with his transfer to the night shift.

Kaminski may support his retaliation claim using either the direct or indirect method of proof. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008). To establish retaliation

using the direct method, Kaminski must put forth evidence that he engaged in statutorily protected conduct, that he was subjected to an adverse employment action and a causal connection between the two. *Gates*, 513 F.3d at 686. Evidence of a causal link is evidence that the "protected conduct was a substantial or motivating factor in the employer's decision." *Gates*, 513 F.3d at 686. The Court finds no direct evidence of retaliation in the record. To the contrary, the undisputed evidence is that when Zunk placed Kaminski on administrative leave, Zunk did not know that Kaminski had made a civil rights complaint. Accordingly, the Court also considers Kaminski's claim under the indirect method.

To make out a *prima facie* case of retaliation under the indirect method, Kaminski must demonstrate, "that after engaging in protected activity such as filing a charge, [he] was subjected to an adverse employment action even though [he] was performing [his] job satisfactorily, and no similarly situated employee who did not file a charge was subjected to the adverse employment action." *Mannie v. Potter*, 394 F.3d 977, 984 (7th Cir. 2005).

Here, defendant concedes that Kaminski engaged in protected conduct and that he was placed on administrative leave. Kaminski fails, however, to put forth admissible evidence that no similarly-situated individual who had not engaged in protected conduct was subjected to the adverse action. Kaminski has put forth no evidence that any other TSA employee was accused of racial profiling and not placed on administrative leave, let alone someone who had not engaged in protected conduct. Kaminski has also failed to put forth any evidence that any individual who made inappropriate comments at a screener meeting, but who had not engaged in protected conduct, successfully avoided being placed on administrative leave. Evidence of similarly-situated individuals is an essential element of his *prima facie* case, and, without it,

defendant is entitled to judgment as a matter of law on Kaminksi's retaliation claim. *Kriescher v. Fox Hills Golf Resort & Conf. Ctr.*, 384 F.3d 912, 915 (7th Cir. 2004).

Accordingly, the Court grants defendant's motion for summary judgment.

## IV. <u>Conclusion</u>

For the reasons set forth above, the Court grants defendant's motion for summary judgment.

ENTER:

*/s/ George M. Marovich*

George M. Marovich
United States District Judge

DATED: June 30, 2009